**Docket Nos. 24-2179 (L), 24-3463**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

CARLOS DADA, et al.,

*Plaintiffs-Appellants,*

v.

NSO GROUP TECHNOLOGIES LIMITED, et al.,

*Defendants-Appellees.*

*Appeal from a Decision of the United States District Court for the Northern District of California, No. 3:22-cv-07513-JD · Honorable James Donato*

# APPELLANTS' OPENING BRIEF

CAROLINE DECELL
JAMEEL JAFFER
STEPHANIE KRENT
ANNA "MAYZE" TEITLER
NICOLE MO
KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY
475 Riverside Drive, Suite 302
New York, New York 10115
Tel: (646) 745-8500
carrie.decell@knightcolumbia.org
jameel.jaffer@knightcolumbia.org
stephanie.krent@knightcolumbia.org
mayze.teitler@knightcolumbia.org
nicole.mo@knightcolumbia.org

COREY STOUGHTON
ALVARO MON CUREÑO
SELENDY GAY PLLC
1290 Avenue of the Americas, 17th Floor
New York, New York 10104
Tel: (212) 390-9000
cstoughton@selendygay.com
amoncureno@selendygay.com

*Attorneys for Appellants Carlos Dada, Sergio Arauz, Gabriela Cáceres Gutiérrez, Julia Gavarrete, Roman Gressier, Gabriel Labrador, Ana Beatriz Lazo Escobar, Efren Lemus, Daniel Lizárraga, Carlos López Salamanca, Carlos Martínez, Óscar Martínez, María Luz Nóchez, Víctor Peña, Nelson Rauda Zablah, Daniel Reyes Martínez, Mauricio Sandoval Soriano, and José Luis Sanz*


COUNSEL PRESS INC. · (213) 680-2300

PRINTED ON RECYCLED PAPER




## Table of Contents

Introduction ...................................................................................1

Statement of Jurisdiction.................................................................2

Statement of the Issues...................................................................2

Statement of the Case.....................................................................3

    I.    Facts .................................................................................3

        A.    NSO Group's Pegasus Spyware.......................................3

        B.    The Pegasus Attacks Against Plaintiffs ...........................6

        C.    The United States' Response to the Threats Posed by Pegasus.........................................................................9

    II.    Procedural History ..........................................................11

Summary of Argument ..................................................................12

Argument......................................................................................14

    I.    Standard of Review ..........................................................14

    II.    The district court applied the wrong legal standard in failing to accord Plaintiffs' choice of forum any deference. ...................................15

    III.    The district court abused its discretion in misapplying the *forum non conveniens* factors. ..................................................20

        A.    The district court abused its discretion in analyzing the public-interest factors.....................................................22

            1.    California has a strong local interest in addressing unlawful conduct carried out in the state............................22

            2.    Plaintiffs' claims turn on U.S. and California law. .............28

4. Defendants offered no evidence that Israeli courts are less congested than Plaintiffs' forum of choice...................31

5. The cost of resolving a dispute unrelated to the forum is not a relevant factor here....................................32

B. The district court abused its discretion in analyzing the private-interest factors.....................................33

1. Plaintiffs' residences weigh in favor of their choice of forum.................................................................33

2. California is a more convenient forum for the parties.........35

3. The location of witnesses and evidence favors litigating in California...........................................40

4. The remaining private-interest factors do not weigh in favor of dismissal.................................................44

Conclusion .................................................................................46

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
  458 U.S. 592 (1982)................................................................27

*Alternate Health USA Inc. v. Edalat*,
  No. 8:17-cv-01887-JWH-JDEx, 2022 WL 767573
  (C.D. Cal. Mar. 14, 2022) ..................................................44

*Apple Inc. v. NSO Grp. Techs. Ltd.*,
  No. 3:21-CV-09078 (N.D. Cal. Nov. 23, 2021) .........................*passim*

*Apple Inc. v. NSO Grp. Techs. Ltd.*,
  No. 3:21-cv-09078-JD, 2024 WL 251448 (N.D. Cal. Jan. 23, 2024) .........*passim*

*Ayco Farms, Inc. v. Ochoa*,
  862 F.3d 945 (9th Cir. 2017) .......................................22, 30

*Bigio v. Coca-Cola Co.*,
  448 F.3d 176 (2d Cir. 2006) ..............................................14

*Boston Telecomms. Grp., Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009) .......................................*passim*

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011) .......................................*passim*

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) ...........................................20

*Chloe SAS v. Sawabeh Info. Servs. Co*,
  No. CV 11-04147 GAF, 2012 WL 7679386
  (C.D. Cal. May 3, 2012) ...............................................36, 38

*City of Almaty v. Khrapunov*,
  685 F. App'x 634 (9th Cir. 2017)...........................21, 23, 28, 31

*Cont'l Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960).........................................................25

*Cooper v. Tokyo Elec. Power Co., Inc.*,
166 F. Supp. 3d 1103 (S.D. Cal. 2015)............................................29, 30, 31, 35

*Cooper v. Tokyo Elec. Power Co., Inc.*,
860 F.3d 1193 (9th Cir. 2017) ...................................................................33, 34

*Corallo v. NSO Grp. Techs. Ltd.*,
No. 3:22-CV-05229 (N.D. Cal. Sept. 13, 2022)...................................................37

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
61 F.3d 696 (9th Cir. 1995) ...................................................................................30

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ...............................................................10, 26, 36

*DiFederico v. Marriott Int'l, Inc.*,
714 F.3d 796 (4th Cir. 2013) .................................................................................24

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002) ...............................................................................24

*Finjan, Inc. v. Cisco Sys., Inc.*,
No. 5:17-cv-00072-BLF-SVK, 2019 WL 667766
(N.D. Cal. Feb. 19, 2019) ......................................................................................44

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) ......................................................................31, 40

*Glob. Commodities Trading Grp., Inc. v. Beneficio de
Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) .........................................................................1, 20

*Gund v. Philbrook's Boatyard*,
374 F. Supp. 2d 909 (W.D. Wash. 2005) ............................................................29

*Ito v. Tokio Marine & Fire Ins. Co.*,
166 F. App'x 932 (9th Cir. 2006) .........................................................................18

*Kater v. Churchill Downs Inc.*,
886 F.3d 784 (9th Cir. 2018) ........................................................................10, 36

*Lamont v. Postmaster Gen. of U.S.*,
381 U.S. 301 (1965)...............................................................................................26

iv

*Lewis v. Liberty Mut. Ins. Co.*,
  953 F.3d 1160 (9th Cir. 2020) ....................................................13, 14, 46

*Lockman Foundation v. Evangelical Alliance Mission*,
  930 F.2d 764 (9th Cir. 1991) ....................................................18, 38, 41

*Lony v. E.I. Du Pont de Nemours & Co.*,
  886 F.2d 628 (3d Cir. 1989) ................................................................16

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ......................................................22, 41

*Martinez v. White*,
  492 F. Supp. 2d 1186 (N.D. Cal. 2007).................................................34

*Matthews v. Nat'l Football League Mgmt. Council*,
  688 F.3d 1107 (9th Cir. 2012) .............................................................26

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ..............................................................27

*Mujica v. Occidental Petroleum Corp.*,
  381 F. Supp. 2d 1134 (C.D. Cal. 2005) ...............................................39

*Neelon v. Bharti*,
  596 F. App'x 532 (9th Cir. 2014) ......................................19, 32, 43

*Neuralstem, Inc. v. ReNeuron, Ltd.*,
  365 F. App'x 770 (9th Cir. 2010) .....................................................*passim*

*Nowak v. Tak How Invs., Ltd.*,
  94 F.3d 708 (1st Cir. 1996)..................................................................36

*Otto Candies, LLC v. Citigroup, Inc.*,
  963 F.3d 1331 (11th Cir. 2020) .............................................14, 15, 17

*Prevent USA Corp. v. Volkswagen AG*,
  17 F.4th 653 (6th Cir. 2021) ...............................................................14

*Ravelo Monegro v. Rosa*,
  211 F.3d 509 (9th Cir. 2000) ..............................................15, 16, 20

*Reid-Walen v. Hansen*,
  933 F.2d 1390 (8th Cir. 1991) ...................................................42

*Ridgway v. Phillips*,
  383 F. Supp. 3d 938 (N.D. Cal. 2019) ......................................38

*Ryanair DAC v. Expedia Inc.*,
  No. C17-1789RSL, 2018 WL 3727599 (W.D. Wash. Aug. 6, 2018) ...............42

*Salebuild, Inc. v. Flexisales, Inc.*,
  633 F. App'x 641 (9th Cir. 2015) .............................................17

*Shi v. New Mighty U.S. Tr.*,
  918 F.3d 944 (D.C. Cir. 2019) .............................................15, 16

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
  382 F.3d 1097 (11th Cir. 2004) ...............................................19

*Strudley v. Santa Cruz Cnty. Bank*,
  747 F. App'x 617 (9th Cir. 2019) .............................................19

*Summa Res. Holdings LLC v. Carbon Energy Ltd.*,
  No. 15-cv-05334-TEH, 2016 WL 2593868
  (N.D. Cal. May 5, 2016) .......................................................42

*Summers v. Starwood Hotels*,
  No. CV11-10608 GAF, 2013 WL 12113227
  (C.D. Cal. Feb. 27, 2013) .....................................................27

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) .........................................*passim*

*United Auburn Indian Cmty. of the Auburn Rancheria v. Salazar*,
  No. CV 12-1988 (RBW), 2013 WL 12313021
  (D.D.C. Jan. 4, 2013) .........................................................25

*Van Schijndel v. Boeing Co.*,
  434 F. Supp. 2d 766 (C.D. Cal. 2006) ....................................37, 42

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  No. 19-cv-07123-PJH, 2023 WL 7726411
  (N.D. Cal. Nov. 15, 2023) .............................................*passim*

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
No. 4:19-CV-07123 (N.D. Cal. Oct. 29, 2019) ..................................................37

*Will Co., Ltd. v. Lee*,
47 F.4th 917 (9th Cir. 2022) ..............................................................................23

*Wilson v. Playtika, Ltd.*,
349 F. Supp. 3d 1028 (W.D. Wash. 2018) .........................................................42

**Statutes**

28 U.S.C. § 1291 ......................................................................................................2

28 U.S.C. § 1331 ......................................................................................................2

28 U.S.C. § 1367 ......................................................................................................2

California Comprehensive Computer Data Access and Fraud Act, Cal.
Penal Code § 502 ..............................................................................................11

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ...............................................11

**Other Authorities**

Foreign Judgments Enforcement Law, 5718–1958, LSI 12 82 (1958)
as amended (Isr.) ..............................................................................................45

Cal. Civ. L.R. 3-12(a)(2) ........................................................................................37

Christabel Narh, *Zooming Our Way Out of the Forum Non
Conveniens Doctrine*, 123 COLUM. L. REV. 761, 786–95 (2023) ......................42

Exec. Order No. 14,093, 88 Fed. Reg. 18,957, 18,958 (Mar. 27, 2023) ...............27

Exec. Order No. 14,093, 88 Fed. Reg. 18,957, 18,957 (Mar. 27, 2023) ...............10

Fed. R. Evid. 201(b)(2) .....................................................................................26, 36

*Israel, the West Bank and Gaza Travel Advisory*, U.S. DEPT. OF
STATE, https://travel.state.gov/content/travel/en/
traveladvisories/traveladvisories/israel-west-bank-and-gaza-travel-
advisory.html (June 27, 2024) ..........................................................................36

*Joint Statement on Efforts to Counter the Proliferation and Misuse of Commercial Spyware* (Mar. 18, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/03/18/joint-statement-on-efforts-to-counter-the-proliferation-and-misuse-of-commercial-spyware ..............................................11

Nat'l Intelligence, *Annual Threat Assessment of the U.S. Intelligence Community* 30–31 (2024) ....................................................................................11

*2021*, PEW RSCH. CTR. (Aug. 16, 2023), https://perma.cc/LDV5-CDDC (reporting that, as of 2021, California had the largest Salvadoran population of any U.S. state) ..........................................................26

Press Release, Governor Gavin Newsom, Governor Newsom Arrives in El Salvador to Meet with International Aid Organizations, Human Rights Advocates and Top Central American Officials (Apr. 7, 2019), https://perma.cc/7NR4-C6PX ..................................................26

## Introduction

This case centers on Defendants NSO Group and Q Cyber's development and deployment of their signature spyware system, called "Pegasus," through the deliberate and sustained abuse of the software and services of California-based technology company Apple. Plaintiffs are journalists and other members of the news organization El Faro whose iPhones were attacked with Pegasus hundreds of times over an eighteen-month period and who seek to hold Defendants accountable for their role in those attacks under U.S. and California law.

The district court abused its discretion in dismissing Plaintiffs' Amended Complaint on the ground of *forum non conveniens*. The doctrine of *forum non conveniens* is "an exceptional tool to be employed sparingly." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020) (citation omitted). Plaintiffs' claims arise from the same course of conduct at issue in litigation brought by Apple against Defendants in the same forum— specifically, Defendants' abuse of Apple's infrastructure, through which Defendants developed and then used exploits to deliver Pegasus to Apple users, including Plaintiffs. Indeed, shortly after this case was filed, it was related to the *Apple* litigation, and both cases have since proceeded before the same district court. The district court rightly rejected Defendants' *forum non conveniens* argument in the *Apple* case, concluding that the relevant public- and private-interest factors did not

1

weigh against litigating that case in Apple's chosen forum. Those factors do not weigh against litigating this case in the same forum. In concluding to the contrary, the district court misapplied the legal standard established by this Court and directly contradicted its own analysis of the same factors in the *Apple* case, failing to afford Plaintiffs' choice of forum due deference and displacing the heavy burden from Defendants to Plaintiffs.

Therefore, Plaintiffs respectfully request that this Court reverse the district court's decision and remand the case for further proceedings.

## Statement of Jurisdiction

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. On March 8, 2024, the district court entered a final order granting Defendants' motion to dismiss. ER-004 ("Mot. to Dismiss Order"). Plaintiffs timely filed a notice of appeal on April 8, 2024. ER-081. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.[1]

## Statement of the Issues

Whether the district court abused its discretion in granting Defendants' motion to dismiss on the ground of *forum non conveniens* where: (1) Plaintiffs include a U.S. citizen and U.S. residents; (2) Plaintiffs' claims challenge conduct

---

[1] Plaintiff Daniel Lizárraga filed his notice of appeal on May 29, 2024, pursuant to an order from the district court extending the time for him to do so. *See* ER-078, ER-103.

that Defendants carried out in California and that targeted a corporation based in California; and (3) the district court already rejected a *forum non conveniens* challenge in another case brought against the same Defendants and predicated on claims, facts, and witnesses that are substantially the same as those at issue in this case.

<p style="text-align:center">**Statement of the Case**</p>

**I.     Facts**

**A.     NSO Group's Pegasus Spyware**

Defendants NSO Group and Q Cyber develop spyware and sell it to rights-abusing governments around the world. ER-016 (Am. Compl. ¶ 1). Defendants' signature spyware product, Pegasus, enables operators to take full control of a target's smartphone, giving them access to GPS locations, contact details, text messages, phone calls, notes, web-browsing history, messaging-application activity, files, and passwords—even if the target used security measures like encryption to protect their data. ER-023–24 (Am. Compl. ¶¶ 37–38, 40). Pegasus allows operators to activate the microphone and camera on a target's smartphone, turning the phone into a real-time recording device. ER-023 (Am. Compl. ¶ 38). It also gives operators access to a target's cloud-based data, by allowing operators to copy the authentication keys that smartphones use to access cloud services like iCloud, Google Drive, and Facebook Messenger. ER-023–24 (Am. Compl. ¶ 39).

Defendants have engineered zero-click exploits that they and their clients can use to deliver Pegasus to smartphones remotely and surreptitiously. ER-024 (Am. Compl. ¶ 40). Unlike a one-click attack, which requires a target to click on a link in order to trigger the attack, a zero-click attack downloads and installs spyware on the target's device without the target's involvement or awareness, making it all but impossible for even sophisticated smartphone users to prevent or detect attacks. *Id.* Pegasus is also designed to subvert the normal safeguards that would alert a target to the presence of malicious software. For example, when run on iPhones, Pegasus disables crash reporting to Apple, and Defendants mask many of the malicious processes that Pegasus runs by giving them names similar to the names of legitimate Apple iOS processes. *Id.*

Developing and deploying Pegasus against Plaintiffs in this case required a sustained effort targeting Apple, a California-based technology company, ER-024–26 (Am. Compl. ¶¶ 42–45), and extensive interaction with Apple's U.S.-based servers, many of which are in California, ER-024 (Am. Compl. ¶ 41). To ensure that Pegasus would be capable of infecting iPhones, Defendants created Apple ID accounts to discover vulnerabilities in Apple software. They then used these accounts to probe Apple's servers and services to develop the exploits used to infect iPhones with Pegasus, ER-024 (Am. Compl. ¶ 42), and then again to deploy those exploits and deliver Pegasus to targets' iPhones, ER-025 (Am. Compl. ¶ 43). Indeed,

NSO Group maintains a dedicated, long-running practice of mining Apple software for vulnerabilities and exploiting those vulnerabilities. *See* ER-016, 024–26 (Am. Compl. ¶¶ 3, 40–45). As of July 2021, Defendants were "able to remotely and covertly compromise all recent iPhone models and versions of Apple's mobile operating system." ER-026 (Am. Compl. ¶ 45).

Defendants and their clients exploited vulnerabilities Defendants identified in Apple's software to infect targets' iPhones with Pegasus. Though Defendants have developed other zero-click exploits, the exploits used to attack Plaintiffs' iPhones— called KISMET and FORCEDENTRY—involved an especially close interplay between Defendants' technology, Apple's infrastructure, and Plaintiffs' iPhones. First, Defendants and their clients used a target's Apple ID or other information to confirm that the target's device was an iPhone. ER-025 (Am. Compl. ¶ 43). Second, Defendants and their clients used Defendants' Apple ID accounts to send malicious data through Apple's iMessage service to the target's iPhone. *Id.* Third, this malicious data caused the target's iPhone to retrieve Pegasus through a network of servers operated or maintained by Defendants. *Id.* In the case of at least FORCEDENTRY, the Pegasus file was stored temporarily on one of Apple's iCloud servers before it was delivered to the target's iPhone. *Id.* Finally, once a target's iPhone was infected, Pegasus operators used command-and-control servers configured and maintained by Defendants to take control of the target's iPhone for

however long the infection lasted.[2] These operators issued commands to the infected device, allowing them to, for example, exfiltrate data, enable location tracking, record audio, or take photographs. ER-025 (Am. Compl. ¶ 44). Operators could then use any authentication keys they extracted from a target's iPhone to access and extract data from the target's cloud-based accounts, like iCloud or Google Drive storage. ER-023–24 (Am. Compl. ¶ 39).

## B.   The Pegasus Attacks Against Plaintiffs

This case concerns Defendants' and their clients' use of Pegasus against journalists and others working for El Faro, a digital newspaper that serves as one of the preeminent sources of independent journalism in Central America. ER-028–29 (Am. Compl. ¶ 54). El Faro is dedicated to investigative and in-depth reporting on issues including corruption, violence, organized crime, migration, inequality, and human rights. *Id.* It has a substantial readership in the United States, particularly in California. ER-017 (Am. Compl. ¶ 4).

Between June 2020 and November 2021, Defendants and their clients used zero-click exploits to surreptitiously install Pegasus on the iPhones of at least twenty-two of El Faro's thirty-five employees, including Plaintiffs. ER-028–29, 031

---

[2] Some infections were short-lived, allowing operators to hack targets' iPhones, exfiltrate data, and then attempt to cover their tracks by deleting traces of the infection. ER-025–26 (Am. Compl. ¶ 44). Other infections were active for prolonged periods of time, allowing operators to conduct ongoing surveillance. *Id.*

(Am. Compl. ¶¶ 54, 63). These attacks disabled Apple iOS features on Plaintiffs' iPhones, enabled Defendants and their clients to issue commands to the iPhones without Plaintiffs' knowledge or consent, and undermined the value of Plaintiffs' iPhones as devices for private communication and computing. ER-031 (Am. Compl. ¶ 63). Analyses from the Citizen Lab at the University of Toronto's Munk School of Global Affairs & Public Policy confirmed that Defendants and their clients exfiltrated data from *at least* twelve of Plaintiffs' iPhones. *Id.* In one instance, one of El Faro's sources played an extracted audio recording of a private conversation between Plaintiffs Carlos and Óscar Martínez to another El Faro employee. ER-040 (Am. Compl. ¶ 105).

Some attacks occurred during periods in which many Plaintiffs were communicating with U.S. officials. During the eighteen months in which Carlos Martínez's iPhone was frequently hacked, Martínez was in regular contact with U.S. Embassy officials as part of his investigation into the Salvadoran government's secret negotiations with Salvadoran gangs. ER-040 (Am. Compl. ¶ 105). Plaintiff Nelson Rauda Zablah's iPhone was hacked at least six times, including on three dates on which he visited the U.S. Embassy. ER-043 (Am. Compl. ¶ 121). And Plaintiff José Luis Sanz, now a U.S. resident, regularly met with U.S. Embassy officials, as well as diplomatic representatives from Europe, in the six-month period during which his iPhone was hacked. ER-017, 046 (Am. Compl. ¶¶ 4, 133).

7

During these periods, Plaintiffs and other El Faro employees were unaware that their iPhones had been compromised. ER-030 (Am. Compl. ¶ 60). In October 2021, after evidence of a Pegasus infection was uncovered on the personal device of Plaintiff Julia Gavarrete, Ms. Gavarrete informed El Faro's leadership, which began investigating the Pegasus attacks against Plaintiffs. *Id.* El Faro initially submitted data from eleven devices used by El Faro employees for analysis by the Citizen Lab. ER-030 (Am. Compl. ¶ 61). When the Citizen Lab confirmed that all eleven devices had evidence of Pegasus attacks, El Faro submitted data from an additional thirty devices by December 2021. *Id.*

The Pegasus attacks not only caused Plaintiffs serious personal harms, but also upended Plaintiffs' professional lives. Plaintiffs have fundamentally altered how they use their iPhones, making it considerably more costly and time-consuming to conduct the in-depth, independent reporting for which El Faro is known. *See, e.g.*, ER-032 (Am. Compl. ¶ 67). Some Plaintiffs suspended interviews with sources after learning that their communications had been compromised, ER-038 (Am. Compl. ¶ 95), and some sources stopped communicating with El Faro reporters after learning of the Pegasus attacks, ER-030 (Am. Compl. ¶ 62). Writers and advertisers have also been deterred from working with El Faro in the wake of the Pegasus attacks. *Id.* Despite the best efforts of Plaintiffs and other El Faro employees, the Pegasus attacks have "undermined El Faro's ability to operate, to support its employees, and to serve

its readers," ER-030 (Am. Compl. ¶ 62), including those in California and throughout the United States, ER-017–18, 047 (Am. Compl. ¶¶ 4, 6, 136).

### C. The United States' Response to the Threats Posed by Pegasus

The use of Pegasus against journalists like Plaintiffs has been met with condemnation and sanction by the U.S. government.

In 2021, the U.S. Department of Commerce added NSO Group to its "Entity List" because NSO Group "supplied spyware to foreign governments that used" it "to maliciously target government officials, journalists, businesspeople, activists, academics, and embassy workers," as well as "dissidents, journalists and activists . . . to silence dissent." ER-027 (Am. Compl. ¶ 50). Indeed, according to the Pegasus Project, by that point at least 180 journalists from the United States and 19 other countries had been targeted in Pegasus attacks, including a New York Times journalist and family members and close associates of Washington Post reporter Jamal Khashoggi, who was brutally murdered in 2018. ER-026 (Am. Compl. ¶ 47). The Biden Administration later opposed U.S. government contractor L3Harris Technologies' bid to acquire NSO Group, observing that Pegasus had been "misused around the world to enable human rights abuses, including to target journalists." ER-027 (Am. Compl. ¶ 50). It also pledged to "stand against digital authoritarianism" and to counter the exploitation of Americans' sensitive data through "commercial spyware." *Id.* Congress has also taken action against the threat of spyware, passing

9

legislation authorizing the Director of National Intelligence to limit the U.S. intelligence community's use of spyware and authorizing the President to impose sanctions on foreign firms and individuals that sell, purchase, or use spyware. *See* ER-027 (Am. Compl. ¶ 51). Through words and actions, the U.S. government has repeatedly emphasized that the unregulated trade in spyware, and Pegasus in particular, poses a serious threat to U.S. interests.

The U.S. government has taken further action since this case was filed.[3] In March 2023, for example, President Biden issued an executive order underscoring the United States' interest in countering the misuse of commercial spyware:

> The United States has a fundamental national security and foreign policy interest in countering and preventing the proliferation of commercial spyware that has been . . . misused . . . in light of the core interests of the United States in protecting United States Government personnel and United States citizens around the world; . . . and defending . . . journalists against threats to their freedom and dignity.

Exec. Order No. 14,093, 88 Fed. Reg. 18,957, 18,957 (Mar. 27, 2023). The United States then joined with sixteen other countries to issue a joint statement recognizing the threat posed by the misuse of commercial spyware, pledging to "defend[] activists, dissidents, and journalists against threats to their freedom and dignity" and

---

[3] Plaintiffs respectfully request that the Court take judicial notice of these developments because each statement of the government's actions has been published on a government website whose accuracy cannot reasonably be questioned. *See, e.g.*, *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

committing to "mitigate collectively the misuse of commercial spyware." The White House, *Joint Statement on Efforts to Counter the Proliferation and Misuse of Commercial Spyware* (Mar. 18, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/03/18/joint-statement-on-efforts-to-counter-the-proliferation-and-misuse-of-commercial-spyware. And the Director of National Intelligence's most recent Annual Threat Assessment identified other governments' increasing use of commercial spyware "to target dissidents and journalists" among the "transnational threats" creating "risks to U.S. national security." U.S. Off. of the Dir. of Nat'l Intelligence, *Annual Threat Assessment of the U.S. Intelligence Community* 30–31 (2024).

## II.    Procedural History

Plaintiffs filed this suit on November 30, 2022, and filed an amended complaint on December 16, 2022, alleging that Defendants' conduct violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502, and California tort law. *See* ER-047–052 (Am. Compl. ¶¶ 137–66). Plaintiffs sought declaratory relief, injunctive relief, and damages. ER-052–053.

On April 21, 2023, Defendants moved to dismiss Plaintiffs' Amended Complaint on several grounds. *See* ER-099. The district court granted the motion on

March 8, 2024, ruling that the case should be dismissed on the ground of *forum non conveniens*. ER-010 (Mot. to Dismiss Order 7:7-12).

On April 8, 2024, Plaintiffs timely filed a notice of appeal.

## Summary of Argument

This case belongs in this forum because (1) Defendants' deliberate and sustained abuse of the software and services of Apple, a California-based company, formed a crucial component of the Pegasus attacks against Plaintiffs; (2) the Pegasus attacks enabled by that abuse harmed not only Plaintiffs—including a U.S. citizen and U.S. residents—but also El Faro's readers in California and throughout the United States, in clear violation of California and U.S. law; (3) Defendants are already litigating a directly related case, involving substantially similar legal claims, facts, and witnesses, in the Northern District of California; and (4) the U.S. government has repeatedly emphasized the nation's fundamental interest in countering the proliferation of commercial spyware and the use of such spyware to target journalists in particular. In dismissing the case for *forum non conveniens*, the district court applied the wrong legal standard and otherwise abused its discretion analyzing and balancing the relevant public- and private-interest factors.

*First*, the district court applied the wrong legal standard in failing to accord due deference to Plaintiffs' choice of forum. All Plaintiffs are entitled to some deference as to their choice of forum, and U.S. citizen and U.S. resident Plaintiffs

are entitled to heightened deference. Here, the district court failed to grant *any* deference to any of Plaintiffs' choice of forum. This failure is sufficient by itself to warrant reversal.

*Second*, the district court abused its discretion in applying the relevant public- and private-interest factors on a motion to dismiss for *forum non conveniens*. It is Defendants' burden to demonstrate that these factors weigh in favor of dismissal. But rather than hold Defendants to their burden, the district court repeatedly displaced it onto Plaintiffs. To name just a few examples, the court failed to credit Plaintiffs' allegations about Defendants' extensive interaction with and manipulation of Apple's software and services when considering California's interest in this case. The court credited arguments about convenience based on the distances between Israel, California, and El Salvador—despite the fact that Defendants themselves never made these arguments. And in numerous instances, the court contradicted its analysis of the same factors in the related *Apple* case. The district court thus applied the *forum non conveniens* standard "illogically, implausibly, [and] in a manner without support in inferences that may be drawn" from the record, ultimately striking "an unreasonable balance of relevant factors." *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1163–64 (9th Cir. 2020) (quoting *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011)).

For these reasons, the district court's decision should be reversed.

## Argument

## I.    Standard of Review

This Court reviews dismissals on the ground of *forum non conveniens* for abuse of discretion. "A district court abuses its discretion by identifying an incorrect legal standard, or by applying the correct standard illogically, implausibly, or in a manner without support in inferences that may be drawn from facts in the record." *Carijano*, 643 F.3d at 1224 (citation omitted); *see also Lewis*, 953 F.3d at 1163–64. In the *forum non conveniens* context specifically, a district court abuses its discretion "by relying on an erroneous view of the law, by relying on a clearly erroneous assessment of the evidence, or by striking an unreasonable balance of relevant factors." *Carijano*, 643 F.3d at 1224 (internal citation omitted).[4] Because this appeal arises from a motion to dismiss, this Court must accept factual allegations from the Amended Complaint as true. *See id.* at 1222 ("We accept as true the facts alleged in the . . . First Amended Complaint[.]"); *see also Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020) (accepting factual allegations in the complaint

---

[4] Other circuits make clear that errors of law related to the *forum non conveniens* doctrine are reviewed *de novo. See Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 658 (6th Cir. 2021) ("In reviewing a forum non conveniens ruling . . . [f]resh review applies to questions of law."); *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (reviewing *de novo* whether district court failed to accord proper deference to foreign plaintiffs' choice of forum).

as true); *Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 948 (D.C. Cir. 2019) (drawing all reasonable inferences in favor of nonmoving party).

## II. The district court applied the wrong legal standard in failing to accord Plaintiffs' choice of forum any deference.

The district court erred in failing to defer to Plaintiffs' choice of forum. All Plaintiffs—whether U.S. citizens, non-citizen residents, or neither—are entitled to deference as to their choice of forum. *See, e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006). Failing to afford that deference, or "erroneously affording reduced deference," is an abuse of discretion and grounds for reversal. *Carijano*, 643 F.3d at 1229. Here, the district court failed to afford any deference whatsoever to the Plaintiffs' choice of forum. This failure is particularly egregious given that some of the Plaintiffs are U.S. citizens or residents whose choice of forum is owed heightened deference.

It is settled law that district courts must afford deference to a plaintiff's choice of forum, even where the plaintiff is neither a U.S. citizen nor a U.S. resident. *See Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000) (stating that foreign plaintiffs' choice of forum is entitled to some deference); *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) (stating that even where plaintiffs are "quintessentially foreign," "it is clear that less deference is not the same thing as no deference" (internal quotations omitted)); *Otto Candies*, 963 F.3d at 1339 (collecting Supreme Court, Second Circuit, and Third Circuit cases and concluding

15

that "[r]educed deference is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for *forum non conveniens* is the exception rather than the rule" (internal quotations omitted)).

This deference is due because, as this Court and its sister circuit courts have recognized, "litigation in a U.S. court [may be] the most convenient choice even for foreign plaintiffs." *Shi*, 918 F.3d at 949; *see also Tuazon*, 433 F.3d at 1180 ("[A] plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant as to be out of proportion to plaintiff's convenience." (collecting cases)); *see Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989) ("Because the reason for giving a foreign plaintiff's choice less deference is . . . merely a reluctance to assume that the choice is a convenient one, that reluctance can readily be overcome by a strong showing of convenience."). And this forum is certainly most convenient for Plaintiffs. *See infra* Section III. Plaintiffs chose to file suit where Defendants deployed the Apple-specific exploits used to deliver Pegasus to their iPhones, *see* ER-016–17, 020, 021–22, 024–26 (Am. Compl. ¶¶ 3, 18, 28, 31, 41–44), and where Apple is litigating a similar suit involving overlapping claims, facts, and witnesses, *see Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-CV-09078 (N.D. Cal. Nov. 23, 2021), thus ensuring that the lion's share of the relevant evidence is already present in this forum. *See Ravelo*

*Monegro*, 211 F.3d at 513–14 (reversing *forum non conveniens* dismissal where the plaintiffs' chosen forum had "a substantial relation to the action").

Moreover, in suits brought by both foreign and domestic plaintiffs, like this one, there is a "strong presumption" in favor of the plaintiffs' choice of forum. *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 642 (9th Cir. 2015) ("While Salebuild India is incorporated in India, Salebuild is a Delaware corporation, and the presence of a foreign co-plaintiff does not lessen the deference owed a domestic plaintiff."); *Carijano*, 643 F.3d at 1228 (reversing *forum non conveniens* dismissal where both domestic and foreign plaintiffs were present and district court applied lower degree of deference to plaintiffs' choice of forum); *see Otto Candies*, 963 F.3d at 1344 ("We have not found any cases holding that reduced deference to American plaintiffs is warranted when they sue alongside foreigners, but we have located a couple that state the opposite.").[5]

The district court erred in failing to give any deference at all to Plaintiffs' choice of forum. The court confined its discussion of deference to a single paragraph in which it mentioned only the lesser deference owed to a foreign plaintiff's choice

---

[5] The distinction between U.S. citizen and U.S. resident plaintiffs makes no difference in assessing the deference owed to these Plaintiffs' choice of forum. *See Tuazon*, 433 F.3d at 1177 n.6 ("In the context of forum non conveniens analysis, a resident alien . . . is entitled to the same deference as a citizen." (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n.23 (1981))).

of forum, and then it failed to accord even that degree of deference. ER-006 (Mot. to Dismiss Order 3:10–19). The district court's single phrase stating that a defendant invoking *forum non conveniens* bears a lighter burden when the plaintiff brings suit outside the plaintiff's home forum falls short of recognizing any deference owed to Plaintiffs' choice of forum. ER-006 (Mot. to Dismiss Order 3:10–12). Even if this phrase were sufficient to "acknowledge[]" the degree of deference owed—it was not—it demonstrably did not equate to actually *giving* Plaintiffs' choice of forum that deference. *See Neuralstem, Inc. v. ReNeuron, Ltd.*, 365 F. App'x 770, 771 (9th Cir. 2010) (holding that, "although the district court purported to give [plaintiff's] choice of forum 'the appropriate regard,'" it had not actually accorded the requisite deference, and that "[t]his was an abuse of discretion"); *see also Ito v. Tokio Marine & Fire Ins. Co.*, 166 F. App'x 932, 935 (9th Cir. 2006) (reversing district court's *forum non conveniens* dismissal where the district court "acknowledged" the correct degree of deference owed to the plaintiff's choice of forum but "did not actually weigh" the plaintiff's choice of forum).[6]

---

[6] The district court also cited *Lockman Foundation v. Evangelical Alliance Mission* for the proposition that, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." 930 F.2d 764, 767 (9th Cir. 1991) (internal quotations omitted); *see* ER-006 (Mot. to Dismiss Order 3:16–18). But *Lockman* does not displace the deference owed to a plaintiff's choice of forum within that balancing test. Indeed, since *Lockman*, appellate courts have consistently reversed *forum non conveniens* dismissals where the district court failed to properly acknowledge and

The court failed even to acknowledge that Plaintiff Roman Gressier is a U.S. citizen and that Plaintiffs Nelson Rauda Zablah and José Luis Sanz were U.S. residents at the time of filing, ER-016 (Am. Compl. ¶ 4),[7] let alone accord their choice of forum the heightened deference it is due. *See* ER-006 (Mot. to Dismiss Order 3:11–12). Though its cursory discussion of the issue leaves its reasoning uncertain, the district court appears to have classified all Plaintiffs as "foreign" because they do not "reside[]" in the Northern District of California. *See* ER-006 (Mot. to Dismiss Order 3:10–15). Where a plaintiff is a U.S. citizen or resident, however, a defendant seeking dismissal on the ground of *forum non conveniens* bears a heavy burden even if the plaintiff does not reside in the specific U.S. forum where they chose to file suit. *See, e.g.*, *Neelon v. Bharti*, 596 F. App'x 532, 533 (9th Cir. 2014) ("Although Neelon, a Massachusetts resident, resides outside of the

---

accord the deference owed to a plaintiff's choice of forum. *See, e.g., Neuralstem*, 365 F. App'x at 771; *see also SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1102 (11th Cir. 2004) (holding that district court abused its discretion and reversing dismissal where "the district court never mention[ed] the presumption in favor of the plaintiffs or incorporate[d] the presumption into its calculus").

[7] Plaintiff Nelson Rauda Zablah resided in the United States when the Complaint and Amended Complaint were filed but does not currently reside in the United States. His change in residence is of no import, as jurisdiction analysis focuses on the moment when the operative pleading was filed. *See Strudley v. Santa Cruz Cnty. Bank*, 747 F. App'x 617, 618 (9th Cir. 2019) ("In line with Supreme Court precedent, this Circuit has adhered to the time-of-filing rule." (quoting *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (collecting cases))).

forum, he is a United States citizen. Where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof [to dismiss a complaint for *forum non conveniens*]." (internal quotation marks omitted)); *Boston Telecomms.*, 588 F.3d at 1207 ("Although Marshall would stand in a stronger position were he a California resident, Marshall is a citizen and resident of the United States and his choice of forum is therefore entitled to more deference than that shown by the district court.").

By "erroneously affording reduced deference to [Plaintiffs'] chosen forum," *Carijano*, 643 F.3d at 1229, the district court "identif[ied] an incorrect legal standard" and thus "abuse[d] its discretion," *id.* at 1224.

## III. The district court abused its discretion in misapplying the *forum non conveniens* factors.

In addition to applying the wrong legal standard on a motion to dismiss for *forum non conveniens*, the district court abused its discretion in analyzing the relevant public- and private-interest factors. Defendants seeking dismissal on the ground of *forum non conveniens* must make a "clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Ravelo Monegro*, 211 F.3d at 514 (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)); *see Glob. Commodities Trading Grp*, 972 F.3d at 1111. Defendants must demonstrate that the balance of relevant private- and public-interest factors "is strongly in favor of the defendant." *Cheng*, 708 F.2d at 1410 (quoting *Gulf Oil Corp.*

20

*v. Gilbert*, 330 U.S. 501, 504 (1947)). Crucially, defendants bear this heavy burden even in cases involving foreign plaintiffs. *See Carijano*, 643 F.3d at 1227 (requiring a showing of "oppressiveness and vexation" in a case involving foreign plaintiffs and one domestic plaintiff); *City of Almaty v. Khrapunov*, 685 F. App'x 634, 636–37 (9th Cir. 2017) (holding that "forum non conveniens [is] an exceptional tool to be employed sparingly" in case brought by foreign city (internal citations omitted)).

Throughout its analysis, the district court failed to hold Defendants to their burden. In analyzing the public-interest factors, the district court failed to credit Plaintiffs' allegations as to the local and U.S. interests in this case, contradicted its conclusions on the same factors in the *Apple* case, failed to account for its familiarity with the California and federal law at issue in this suit, and mischaracterized the burden on local courts and juries. In analyzing the private-interest factors, the district court ignored the residences of some of the key parties and witnesses, failed to consider the convenience of hearing related cases in the same forum, and inverted the parties' burdens on demonstrating access to witnesses and evidence. By applying the *forum non conveniens* standard "illogically, implausibly, or in a manner without support in inferences that may be drawn from facts in the record," the district court abused its discretion. *Carijano*, 643 F.3d at 1224.

**A.** **The district court abused its discretion in analyzing the public-interest factors.**

The district court abused its discretion in concluding that the public-interest factors favor dismissal. These factors include: (1) the "local interest" in the lawsuit; (2) the local court's "familiarity with governing law"; (3) the "burden on local courts and juries"; (4) the amount of "congestion" in the local court; and (5) the costs of the local court "resolving a dispute unrelated to" that forum. *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017) (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001)). None of these factors strongly favors dismissal. To the contrary, because Plaintiffs' claims are rooted in California and U.S. law, and the resolution of those claims is of great interest to California companies and citizens, most factors weigh strongly in favor of litigating this case in California. The remaining factors are inapplicable or, at their most favorable for Defendants, neutral. California is the proper forum for this case.

**1.** **California has a strong local interest in addressing unlawful conduct carried out in the state.**

California has a strong local interest in this case. The district court clearly erred in characterizing the case as "entirely foreign." ER-007 (Mot. to Dismiss Order 4:14). California has an interest in addressing unlawful activities conducted within the state, particularly activities that target California businesses. It also has an interest in protecting its citizens' ability to read El Faro. California's local interests

are bolstered by the United States' explicitly articulated interests in preventing Defendants from subverting U.S. technology to launch spyware attacks against journalists, among others. It is, of course, true that other countries might also have an interest in the dispute presented here, but for purposes of the *forum non conveniens* analysis, this Court "ask[s] only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Boston Telecomms. Grp., Inc.*, 588 F.3d at 1212 (quoting *Tuazon*, 433 F.3d at 1182).

California has an identifiable local interest in this case because the dispute "focuses on allegedly unlawful activities that occurred within California." *City of Almaty*, 685 F. App'x at 636. Here, Defendants developed and deployed the exploits used to deliver Pegasus to Plaintiffs' iPhones through intentional and extensive interaction with Apple's software and services. ER-016, 024 (Am. Compl. ¶¶ 3, 41). Because Apple, and some of the relevant servers, are located in California, many of the "'bad acts' that form the basis of the plaintiff's complaint" occurred in California. *Will Co., Ltd. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)). The fact that some of the Plaintiffs may have felt some of the harms of Defendants' unlawful activities in El Salvador and other locations does not undercut the local interest. *See City of Almaty*, 685 F. App'x at 636 (finding a local interest where a Kazakh city sued its former mayor for misusing the city's public assets); *Neuralstem*, 365 F.

App'x at 772 (rejecting argument that California had no local interest because the "locus" of harm stemming from the challenged conduct was located in another state).

The district court did not credit—or even acknowledge—these allegations when it ruled that "Plaintiffs did not demonstrate any local interest or stake in the events alleged in the complaint." ER-009 (Mot. to Dismiss Order 6:1–2). Because Plaintiffs' case is "rooted in a course of conduct that took place . . . in multiple locations around the globe, including California," California has a local interest in preventing the misconduct that occurred within its borders. *See Boston Telecomms.*, 588 F.3d at 1212 (finding California had an "interest in preventing fraud from taking place within its borders," even though no party was based in California). This is particularly so because Defendants' targeting of the infrastructure of California-based Apple is a central component of the harm to Plaintiffs. *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013) (finding Maryland had a local interest "because [plaintiffs'] central theory revolves around [defendant's] coordination of security from [the state]").

California also has a local interest "in protecting corporations based in California." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1119 (9th Cir. 2002). Indeed, the district court found that the local interest in Apple's case against Defendants was "self-evident." *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078-JD, 2024 WL 251448, at *2 (N.D. Cal. Jan. 23, 2024). Yet, even though

Plaintiffs' and Apple's cases are related and arise from the same course of conduct, ER-014 (Related Case Order, ECF No. 36), the district court did not engage with this interest in the present case, ruling instead that, "even accepting that as true for present purposes, California's interest will by [sic] amply protected in Apple's lawsuit against NSO." ER-009 (Mot. to Dismiss Order 6:4–5). It cannot be that the state's interest in protecting California companies against the same attacks, carried out with at least one of the same exploits, weighs against dismissal in one case and for dismissal in another case brought on the same grounds. The fact that a local interest is implicated in another case in the forum does not negate—but rather confirms—the forum's interest in the present case. *See Boston Telecomms.*, 588 F.3d at 1212 ("We do not suggest that California's interest in this controversy must somehow be unique or not shared with any other forum.").[8] And that is the question—whether the forum has a local interest in the case before the court—not

---

[8] In the similar context of transfer motions, courts routinely recognize the public interest in hearing related cases in the same venue. *See United Auburn Indian Cmty. of the Auburn Rancheria v. Salazar*, No. CV 12-1988 (RBW), 2013 WL 12313021, at *2 (D.D.C. Jan. 4, 2013) (explaining that related cases should be heard in the same forum due to "the compelling public interest in avoiding duplicative proceedings and potentially inconsistent judgments" (citation omitted)); *see also Cont'l Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [change of venue law] was designed to prevent.").

whether any other case would "amply protect[]" that interest. ER-009 (Mot. to Dismiss Order 6:5).

The district court further abused its discretion by discounting California's local interest in protecting the ability of its citizens to read El Faro. ER-009 (Mot. to Dismiss Order 6:6–9). El Faro offers English and Spanish language coverage and has a "broad readership . . . in the United States, and particularly here in California," ER-017, 020 (Am. Compl. ¶¶ 4, 18), which has the largest Salvadoran population of any U.S. state.[9] The Pegasus attacks against Plaintiffs have undermined Plaintiffs' ability to conduct the independent journalism on which their readers rely, ER-017– 18 (Am. Compl. ¶ 6), and have therefore harmed their readers in California. *See Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301, 307 (1965) (recognizing readers'

---

[9] *See* Mohamad Moslimani, Luis Noe-Bustamante & Sono Shah, *Facts on Hispanics of Salvadoran Origin in the United States, 2021*, PEW RSCH. CTR. (Aug. 16, 2023), https://perma.cc/LDV5-CDDC (reporting that, as of 2021, California had the largest Salvadoran population of any U.S. state); Press Release, Governor Gavin Newsom, Governor Newsom Arrives in El Salvador to Meet with International Aid Organizations, Human Rights Advocates and Top Central American Officials (Apr. 7, 2019), https://perma.cc/7NR4-C6PX (noting that Salvadorans in California "make up the largest population of Salvadorans in any U.S. state"). Plaintiffs respectfully request that the Court take judicial notice of this fact because "it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 n.5 (9th Cir. 2012) (taking judicial notice of statistics available on the National Football League's website); *Daniels-Hall*, 629 F.3d at 998–99 (finding judicial notice proper when the information "was made publicly available by government entities . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein").

First Amendment interest in receiving information from foreign sources). California has an interest in redressing that harm to its citizens. *See Summers v. Starwood Hotels*, No. CV11-10608 GAF, 2013 WL 12113227, at *11 (C.D. Cal. Feb. 27, 2013) (noting that California has a local interest if its citizens have suffered injury to an interest); *cf. Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) (holding that, in *parens patriae* context, "a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general").

Lastly, the district court failed to give proper weight to the interest of the United States in this case. That interest is twofold. First, the United States has an interest in this case—indeed, an unusually acute interest—because the Pegasus attacks against these specific Plaintiffs may have compromised the communications of U.S. embassy officials. ER-040, 043, 046 (Am. Compl. ¶¶ 105, 121, 133); *cf. Mujica v. AirScan Inc.*, 771 F.3d 580, 604, 606 (9th Cir. 2014) (addressing U.S. foreign policy interests in related context of comity). Second, the United States has a broader expressed interest in ensuring that Defendants are held accountable for facilitating cyberattacks on journalists. *See, e.g.*, ER-027 (Am. Compl. ¶ 50) (discussing the decision by the U.S. Department of Commerce to add NSO Group to its "Entity List"); Exec. Order No. 14,093, 88 Fed. Reg. 18,957, 18,958 (Mar. 27, 2023) (noting that commercial spyware can be used "to collect information on . . .

journalists . . . in order to intimidate such persons; curb dissent or political opposition; [and] otherwise limit freedoms of expression"). Thus, Plaintiffs rely not on "a massive generalization," as the district court suggested, ER-009 (Mot. to Dismiss Order 6:10–11), but instead on a direct demonstration of the U.S. interest in preventing the unlawful use of Defendants' spyware against journalists specifically. Because California and the United States both have strong interests in this case, the district court abused its discretion in finding that this factor weighed in favor of dismissal.

### 2. Plaintiffs' claims turn on U.S. and California law.

The second public-interest factor, the court's familiarity with the governing law, counsels against dismissal because Plaintiffs bring claims under federal law and the laws of the forum. *See, e.g.*, *City of Almaty*, 685 F. App'x at 636 (reversing dismissal because "United States law governs the resolution of [plaintiff's] federal claims, and California law governs [plaintiff's] common law claims").

The district court is indisputably more familiar with the governing law than an Israeli court, and Defendants have never argued otherwise.[10] Indeed, the district

---

[10] In analyzing this factor, the district court also made passing mention of "the laws of other forums," ER-009 (Mot. to Dismiss Order 6:24–25), and elsewhere suggested the possibility of El Salvador as an alternate forum, ER-007 (Mot. to Dismiss Order 4:23–26). To the extent that the district court faulted Plaintiffs for "not respond[ing]" to that suggestion, ER-009 (Mot. to Dismiss Order 6:26), it abused its discretion. Defendants bore the burden of proving the adequacy of El

court correctly weighed this factor in favor of the plaintiff in *Apple*, where it concluded: "There is no question that the Court's familiarity with the claims Apple alleges under United States federal law and California state law exceeds that of any court in Israel, which greatly enhances the fair and efficient disposition of the case." 2024 WL 251448, at *2; *see also WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 19-cv-07123-PJH, 2023 WL 7726411, at *4 (N.D. Cal. Nov. 15, 2023) (finding same).

Despite reaching the proper conclusion in *Apple*, the district court announced a novel approach to this factor in the present case, suggesting familiarity with the governing law weighs against dismissal only if Plaintiffs prove "they would not have plausible claims under the laws of other forums." ER-009 (Mot. to Dismiss Order 6:24–25). This factor imposes no such burden on Plaintiffs. Indeed, the analysis under this factor is meant to determine whether hearing a case governed by *foreign* law "would impose a substantial burden on both the Court and the jurors, to research, understand, and apply the foreign law." *Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 914 (W.D. Wash. 2005); *cf. Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F.

---

Salvador as an alternate forum, *see Carijano*, 643 F.3d at 1224 (holding that "a defendant bears the burden of demonstrating an adequate alternative forum"), and they clearly did not meet it. They never explicitly argued that El Salvador was an adequate alternate forum; they merely mentioned the possibility of litigating in El Salvador in a single sentence in the introduction to their brief. Mot. to Dismiss 1:5–7, *Dada v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-07513-JD (N.D. Cal. Nov. 30, 2022), ECF No. 46.

Supp. 3d 1103, 1136 (S.D. Cal. 2015) (holding this factor weighed against dismissal where U.S. law likely applied, without considering the plausibility of a claim under Japanese law), *aff'd,* 860 F.3d 1193 (9th Cir. 2017). This case is governed by U.S. and California law—not foreign law. Because this forum's greater familiarity with the governing law is undisputed, the district court abused its discretion in finding that this factor weighed in favor of dismissal.

### 3. The burden on local courts and juries is justified given California's interest in the case.

The district court abused its discretion in concluding that the burden on local courts and juries favored dismissal. ER-009 (Mot. to Dismiss Order 6:18–19). This factor weighs in favor of dismissal only where "the United States' interest in resolving [the] controversy and the relation of the jury community to [the] controversy are extremely attenuated," *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995), such that the local interest is "insufficient" to justify a burden on California courts and juries, *Ayco Farms*, 862 F.3d at 951.

As discussed above, the district court abused its discretion in characterizing this case as "purely foreign," ER-009 (Mot. to Dismiss Order 6:18–19), because Defendants' abuse of the infrastructure of California-based company Apple was indispensable to the Pegasus attacks against Plaintiffs, which also harmed El Faro's readers in California. *See supra* Part III.A.1; ER-016, 024, 025 (Am. Compl. ¶¶ 3, 40–43). As a result, the burden on California citizens of serving on a jury would not

"make[] little sense," ER-009 (Mot. to Dismiss Order 6:15), but would be wholly justified.

Even if this factor did not clearly favor Plaintiffs' choice of forum (which it does), it would not favor dismissal. Defendants offered only a passing line on the burden on local courts and juries. Mot. to Dismiss 9:4–6, *Dada v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-07513-JD (N.D. Cal. Nov. 30, 2022), ECF No. 46. Where "[t]he parties hardly touch" on the question of burdens to local courts and juries, the mere presumption that litigation would burden an already busy court "do[es] not justify dismissal" and should be considered neutral at most. *Cooper*, 166 F. Supp. 3d at 1136.

### 4. Defendants offered no evidence that Israeli courts are less congested than Plaintiffs' forum of choice.

The fourth public-interest factor does not weigh in favor of dismissal because Defendants did not carry their burden to show that Israel is a less congested forum. In evaluating court congestion, "[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984); *see also City of Almaty*, 685 F. App'x at 636 (holding that lower court abused its discretion by weighing congestion burden on forum without comparing it to congestion in courts in the alternative jurisdiction).

Defendants did not argue or offer evidence to support the proposition that Israel would be a speedier forum for this case. When the defendant provides insufficient evidence on a factor, a court abuses its discretion in concluding that a factor is neutral, let alone favors dismissal. *Boston Telecomms.*, 588 F.3d at 1210; *see also Neelon*, 596 F. App'x at 533–34 (reversing a district court where defendants "failed to provide enough information" for the court to reasonably conclude that factors favored dismissal). Because Defendants did not carry their burden in showing that Israeli courts would offer a speedier resolution, this factor cannot weigh in favor of dismissal.

### 5. The cost of resolving a dispute unrelated to the forum is not a relevant factor here.

The final public-interest factor requires a court to consider the burden imposed on the state's judicial system by hearing a dispute unrelated to the forum. This factor does not apply where "there is no 'dispute *unrelated* to *this forum*'"—in other words, a strong local interest in the suit renders this factor "inapplicable." *WhatsApp*, 2023 WL 7726411, at *4 (emphasis in original); *see also Tuazon*, 433 F.3d at 1182 (finding the district court properly concluded there was "no cost in resolving a case unrelated to the forum" where the case was related to the forum). Given California's local interest and the U.S. interest in this case, *see supra* Part III.A.1, this dispute is related to the forum and this factor does not apply.

**B.    The district court abused its discretion in analyzing the private-interest factors.**

The district court abused its discretion in concluding that the private-interest factors favor dismissal. The private-interest factors include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Carijano*, 643 F.3d at 1229 (citation omitted). None of these factors strongly favors dismissal. To the contrary, the residence of the parties and witnesses, the convenience of the forum to the parties, and access to witnesses and evidence all favor Plaintiffs' choice of forum. The district court's opinion did not discuss the remaining factors. In misapplying the private-interest factors, the district court failed to hold Defendants to their burden and abused its discretion.

### 1.    Plaintiffs' residences weigh in favor of their choice of forum.

The district court abused its discretion when it focused solely on Defendants' residence, overlooking Plaintiffs' residences. The court should have looked to the residences of *all* the parties at the time of filing. *See, e.g.*, *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1211 (9th Cir. 2017) (weighing plaintiffs' residences in the United States against dismissal, even though their injuries occurred

in Japan). Courts consider the parties' residences because they shed light on whether litigation in the forum is practical—or even possible. *See Martinez v. White*, 492 F. Supp. 2d 1186, 1191 (N.D. Cal. 2007) (dismissing case for *forum non conveniens* because all parties resided in alternate forum, and defendant, although a U.S. citizen, was incarcerated in Mexico and could not travel to California). At the time of filing, most Plaintiffs lived in El Salvador; others lived in New York City, Washington, D.C., Germany, and Mexico. ER-019–22 (Am. Compl. ¶¶ 14–31). Given the Plaintiffs' residences in the United States and Central America, it is clear that California is a far more convenient forum for Plaintiffs than Israel would be.

The district court largely ignored the residences of Plaintiffs at the time they filed suit, emphasizing instead that "NSO was in Israel" and that only one Plaintiff resided in the United States during the time of the attacks. ER-008 (Mot. to Dismiss Order 5:6, 5:8–10). The district court erred in narrowly focusing on Plaintiffs' locations at the time of the Pegasus attacks rather than their residences at the time of filing. *See Carijano*, 643 F.3d at 1230 ("The district court focused on the fact that the contamination allegations at the heart of the complaint took place in the jungles of the Amazon rainforest, but it failed to consider the residence of all of the parties . . . ."); *Cooper*, 860 F.3d at 1211 (analyzing residences and difficulty of travel for all parties at time of filing, even when injuries occurred in alternate forum);

*Tuazon*, 433 F.3d at 1176 (rejecting, in personal jurisdiction context, argument that Plaintiff should have sued where he suffered injury).

### 2. California is a more convenient forum for the parties.

California is the most convenient forum for the parties overall, and the district court erred when it failed to consider the convenience of the forum to Plaintiffs. This factor requires a court to examine the difficulty and expense that parties might face when litigating a case in a particular forum. *See, e.g.*, *Boston Telecomms.*, 588 F.3d at 1208 (considering the burdens and expense of travel and additional counsel). Convenience encompasses logistical concerns such as the relative costs and time of travel, the necessity of additional representation, and other pragmatic limitations that might render travel difficult. *Id.*; *Cooper*, 166 F. Supp. 3d at 1133; *Carijano*, 643 F.3d at 1230. Here, California is convenient for both parties: Plaintiffs have already indicated their willingness to litigate in the forum, which is considerably closer to them than Defendants' proposed forum, and Defendants are already litigating related cases here, represented by local counsel. The district court abused its discretion by ignoring these facts and focusing only on how far Defendants would be required to travel. ER-008 (Mot. to Dismiss Order 5:24–28).

Plaintiffs' allegations and the available evidence demonstrate that California would undoubtedly be more convenient for Plaintiffs. Requiring that Plaintiffs in this case travel to Israel rather than the United States would impose financial and

logistical burdens on them that the district court failed to credit. Almost all Plaintiffs would be required to travel much farther to litigate this case in Israel, and they would be required to do so at great expense and now more than *de minimis* risk to their safety. Because Israel is currently engaged in an armed conflict near its borders and defending itself from cross-border attacks, multiple countries, including the United States, have issued warnings against unnecessary travel to the country.[11] *Cf. Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 720 (1st Cir. 1996) (considering as part of the private-interest factors "possible political instability in the region" rendering litigation difficult); *Chloe SAS v. Sawabeh Info. Servs. Co*, No. CV 11-04147 GAF (MANx), 2012 WL 7679386, at *24 (C.D. Cal. May 3, 2012) ("In light of geopolitical events, it simply is not feasible to require Plaintiffs . . . to travel to Pakistan to assert their claims.").

---

[11] *E.g.*, *Israel, the West Bank and Gaza Travel Advisory*, U.S. DEPT. OF STATE, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/israel-west-bank-and-gaza-travel-advisory.html (June 27, 2024). Plaintiffs respectfully request that the Court take judicial notice of this travel advisory because it is published on a government website whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2); *see also Kater*, 886 F.3d at 788 n.3 (taking judicial notice of materials "publicly available on [a] Washington government website," the authenticity of which were undisputed); *Daniels-Hall*, 629 F.3d at 998–99 ("It is appropriate to take judicial notice of . . . information . . . made publicly available by government entities . . . and [of which] neither party disputes the authenticity . . . .").

Litigating this case in California is also convenient for Defendants because they are already litigating three other cases involving similar facts and claims here. *See Corallo v. NSO Grp. Techs. Ltd.*, No. 3:22-CV-05229 (N.D. Cal. Sept. 13, 2022); *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-CV-09078 (N.D. Cal. Nov. 23, 2021); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 4:19-CV-07123 (N.D. Cal. Oct. 29, 2019). One of those cases, the *Apple* case, was related to *Dada* because it is based on Defendants' development of the same exploits and deployment of the same spyware that gave rise to Plaintiffs' complaint. *See, e.g.*, Am. Compl. ¶ 43 (alleging that Defendants infected Plaintiffs' iPhones via zero-click exploits KISMET and FORCEDENTRY using Apple ID accounts, iMessages, and Apple's iCloud servers). Indeed, by relating *Apple* and this case, the district court recognized that conducting the two cases in the same forum, before the same judge, would avoid "an unduly burdensome duplication of labor and expense or conflicting results." N.D. Cal. Civ. L.R. 3-12(a)(2); *see* ER-014 (Related Case Order). It would be far less convenient to fragment these related cases across countries than to allow them to proceed in the same court, where the same U.S. counsel for Defendants will already have gathered relevant materials for the related litigation. *See, e.g.*, *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006) (considering the fact that "two proceedings investigating the [same] crash . . . would be inefficient"), *aff'd sub nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008); *Lockman Found.*,

930 F.2d at 770 (recognizing parallel litigation among the private-interest factors "because trying all claims in one case . . . would prevent fragmented litigation").

Even if litigating an additional case about substantially overlapping allegations in the same forum would inconvenience Defendants, California would still be favored in the balance. NSO Group is a sophisticated corporation—one that provides services for multi-million-dollar fees, ER-022–23 (Am. Compl. ¶ 34)— already litigating in this forum, represented by competent U.S. counsel. Additionally, NSO Group has regularly hired U.S.-based firms and attempted to sell its technology to U.S. and state government agencies, including California state agencies. *Id.*; *see Tuazon*, 433 F.3d at 1180 (concluding that, given a company's in-state operations, "[i]t is neither unimaginable nor unreasonable" for it to "defend a lawsuit there").

In contrast, most Plaintiffs are journalists working for an independent news outlet who took no affirmative steps to associate themselves with Israel and who already have U.S. counsel representing them *pro bono*. It beggars belief to suggest that it is more convenient for Plaintiffs to litigate in Israel than it would be for Defendants to litigate in California. *See Chloe SAS*, 2012 WL 7679386, at *24 (considering that some plaintiffs had not previously litigated in alternate forum, that all parties had retained counsel in the litigation, and that all parties were able to proceed in the forum as facts weighing against dismissal); *Ridgway v. Phillips*, 383

F. Supp. 3d 938, 947 (N.D. Cal. 2019) (considering that defendant regularly traveled to California and that plaintiff took no "affirmative action to establish contacts" with alternate forum). In this context, Plaintiffs' convenience is far more compelling than the interests asserted by Defendants.

In analyzing this factor, the district court abused its discretion by considering only whether litigating in California or Israel would be more burdensome for Defendants, as measured by air-mile distances between Israel, El Salvador, and the Northern District of California. ER-008 (Mot. to Dismiss Order 5:24–28). The district court noted that Defendants reside in Israel, and that Israel is further from the Northern District of California than is El Salvador, where some (but not all) Plaintiffs reside. *See id.* (emphasizing NSO Group's "heavier burdens" and concluding that the air-mile distances "will disproportionately burden NSO" for trial). This myopic and mechanical approach fails to account for the convenience of hearing multiple cases involving overlapping allegations in the same forum, as discussed above. Regardless, this Court's precedent offers a clear starting point for determining convenience: a foreign plaintiff's choice of a U.S. forum is presumed convenient to that foreign plaintiff. *See Carijano*, 643 F.3d at 1227; *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1140 (C.D. Cal. 2005). And this case involved not only foreign plaintiffs, but also two U.S. residents and a non-resident U.S. citizen. ER-020–22 (Am. Compl. ¶¶ 18, 28, 31). The district court

disregarded this precedent, scarcely discussing the convenience of the forum to Plaintiffs, let alone recognizing a presumption of convenience as to where they chose to file suit. *See* ER-008 (Mot. to Dismiss Order 5:8–10). Ignoring the relevant evidence of California's convenience was an abuse of discretion.

### 3. The location of witnesses and evidence favors litigating in California.

The district court abused its discretion in concluding that this factor favored Defendants, and in particular by requiring Plaintiffs to show that the location of witnesses and evidence favored litigation in this forum, rather than requiring Defendants to show that the location of witnesses and evidence favored dismissal.

This Court has emphasized that defendants bear the burden of explaining "'the materiality and importance' of the anticipated witnesses and documentary evidence" located outside the forum. *Neuralstem*, 365 F. App'x at 772 (quoting *Gates Learjet*, 743 F.2d at 1335). Defendants did not do so here. They gestured to some unspecified quantum of Israeli evidence and witnesses, Mot. to Dismiss 8:9–11, *Dada*, No. 3:22-cv-07513-JD, ECF No. 46, but Plaintiffs' allegations focus on Defendants' deliberate targeting of Apple's infrastructure, ER-016–17, 023–26 (Am. Compl. ¶¶ 3, 39, 41–44), so much of the relevant evidence will be in Apple's control in California. Other relevant evidence will be within Defendants' control "and thus can

be brought to court wherever the forum." *Neuralstem*, 365 F. App'x at 772.[12] In fact, many of these witnesses and much of this evidence will already be in the forum for the related *Apple* litigation, where Defendants and Apple will have to produce materials pertaining to the very same exploits and Pegasus attacks.[13] Under these circumstances, it is most convenient to allow these two cases to proceed together—requiring the parties to present overlapping evidence and witnesses in two separate judicial systems would lead to unnecessary duplication of effort. *See Lueck*, 236 F.3d at 1147 (concluding that existence of parallel litigation in New Zealand involving shared evidence and witnesses made it "all the more clear that the private interest factors weigh[ed] in favor of" New Zealand); *Lockman Found.*, 930 F.2d at 770 (recognizing "trying all claims" in the same forum would prevent fragmented

---

[12] The allegations that Pegasus attacks on Plaintiffs' iPhones occurred through the deliberate targeting of Apple's infrastructure, ER-016–17, 023–26 (Am. Compl. ¶¶ 3, 39, 41–44), made it clear that materials held by Apple would be relevant to the case, not in control of the parties, and likely located in this forum. *See Lueck*, 236 F.3d at 1146–47 (holding that the location of evidence in a certain forum is especially relevant when neither party controls such evidence). These pleadings, which were not credited in the district court's opinion, further underscore Defendants' failure to carry their burden. *See,* ER-008 (Mot. to Dismiss Order 12:10–15).

[13] Discovery in *Apple* is scheduled to proceed well into 2025, with a pretrial conference set for November of that year. Case Management Scheduling Order, *Apple Inc. v. NSO Grp. Techs. Ltd.*, No. 3:21-CV-09078-JD (N.D. Cal. May 28, 2024), ECF No. 95.

litigation); *Van Schijndel*, 434 F. Supp. 2d at 780 (recognizing overlapping litigation in different forums would be inefficient).[14]

In any event, advances in electronic discovery and modern communications methods significantly reduce the inconvenience of litigating when relevant materials—particularly the electronic materials at the heart of this case—and witnesses are located abroad, as the district court recognized in the related *Apple* case. 2024 WL 251448, at *2; *see also Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1039 (W.D. Wash. 2018); *Summa Res. Holdings LLC v. Carbon Energy Ltd.*, No. 15-cv-05334-TEH, 2016 WL 2593868, at *6 (N.D. Cal. May 5, 2016); *Ryanair DAC v. Expedia Inc.*, No. C17-1789RSL, 2018 WL 3727599 (W.D. Wash. Aug. 6, 2018); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1397 (8th Cir. 1991); Christabel Narh, *Zooming Our Way Out of the Forum Non Conveniens Doctrine*, 123 COLUM. L. REV. 761, 786–95 (2023). When evidence will be produced across borders through similar

---

[14] In their arguments to the district court, Defendants grasped at Israeli export law, but to no avail. *See* Mot. to Dismiss 8:11–20, *Dada*, No. 3:22-cv-07513-JD, ECF No. 46 (arguing that Israel's Defense Export Control Law prohibits the transfer of relevant information to the United States); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 19-CV-07123-PJH, 2023 WL 7726411, at *2 (N.D. Cal. Nov. 15, 2023) (rejecting the same argument because "defendants have provided no basis for concluding that the other Israeli restrictions would apply with any less force if the case were to be litigated in Israel"). As Plaintiffs argued below, Israeli experts may be compelled to testify in U.S. proceedings, and the export control laws Defendants cited apply equally to testimony in U.S. and Israeli courts. Opp'n to Mot. to Dismiss 11:11–19, *Dada*, No. 3:22-cv-07513-JD, ECF No. 48.

procedures regardless of the ultimate forum, Defendants have "not made a strong showing that this private interest factor favors dismissal." *Boston Telecomms.*, 588 F.3d at 1208.

Rather than holding Defendants to their burden on this factor, the district court suggested that Plaintiffs needed to "demonstrate that any significant quantum of witnesses or evidence may be located in this District." ER-008 (Mot. to Dismiss Order 5:11–12). As discussed above, Plaintiffs have done so—but the location of evidence and witnesses was not Plaintiffs' burden to prove. *Neuralstem*, 365 F. App'x at 772; *see also*, *Neelon*, 596 F. App'x at 534 (recognizing defendants bear the burden to show the location of relevant evidence). Defendants must supply sufficient information to support their claim of disproportionate *inconvenience* on this factor, and they did not do so. *See WhatsApp*, 2023 WL 7726411, at *3 (rejecting same Defendants' "largely speculative" arguments about witnesses' testimony because they did not supply enough information for the court to balance the interests); *Neelon*, 596 F. App'x at 534 (rejecting *forum non conveniens* motion in part because defendants, who offered only a list of witnesses residing abroad, "failed to provide enough information" to evaluate the "materiality and importance" of their testimony) (citation omitted)). Misstating and misapplying this burden was an abuse of discretion.

### 4.   The remaining private-interest factors do not weigh in favor of dismissal.

Because the remaining private-interest factors are neutral at best for Defendants, they cannot carry Defendants' burden.

With respect to the fourth factor, Defendants did not demonstrate that there were unwilling witnesses who could not be compelled to testify in California; indeed, as discussed above, they failed to meet their burden of identifying material or important witnesses at all. Defendants control the availability of their own witnesses, and Plaintiffs never expressed any interest in calling third-party witnesses who might be unable to testify. *Cf. Alternate Health USA Inc. v. Edalat*, No. 8:17-cv-01887-JWH-JDEx, 2022 WL 767573, at *8–9 (C.D. Cal. Mar. 14, 2022) (concerning unwilling third-party witnesses in Canada), *aff'd*, No. 22-55353, 2023 WL 8732811 (9th Cir. Dec. 19, 2023). Moreover, Defendants conceded that Israeli witnesses may be compelled to testify in U.S. proceedings. ER-012 (Decl. of Roy Blecher ¶ 2, ECF No. 46-1); *see, e.g.*, *Finjan, Inc. v. Cisco Sys., Inc.*, No. 5:17-cv-00072-BLF-SVK, 2019 WL 667766, at *1 (N.D. Cal. Feb. 19, 2019) (submitting requests for testimony of Israeli witnesses).

With respect to the fifth factor, Defendants did not argue that there would be significant costs incurred by litigating in California. Even if they had, the use of alternative mechanisms like "remote video depositions" would reduce the burden. *See Apple*, 2024 WL 251448, at *2.

Finally, with respect to the sixth factor, Defendants argued that enforcement of an Israeli judgment might be "easier" in Israel, but they did not demonstrate, nor could they, that a judgment rendered in California would be unenforceable. *See* § 3, Foreign Judgments Enforcement Law, 5718–1958, LSI 12 82 (1958), as amended (Isr.); *Apple*, 2024 WL 251448, at *2; *WhatsApp*, 2023 WL 7726411, at *3. None of these remaining factors weighs in favor of dismissing this case for *forum non conveniens*.

\* \* \*

The district court applied the wrong legal standard in failing to accord Plaintiffs' choice of forum the deference it was due. In fact, the district court did not accord Plaintiffs' choice of forum any deference at all, notwithstanding the heightened deference due to domestic Plaintiffs. The district court further abused its discretion in concluding that the *forum non conveniens* factors justified dismissal in this case. In assessing the public- and private-interest factors, the district court repeatedly credited Defendants' sparse, largely unsupported arguments. It did so without any regard to Defendants' heavy burden of proof on a motion to dismiss for *forum non conveniens*, while sometimes failing to credit Plaintiffs' allegations as it must at this stage of the litigation. At other times, the district court took the opportunity to expand upon Defendants' arguments, raising points to which Plaintiffs never had an opportunity to respond. The district court thus abused its

45

discretion by applying the "incorrect legal standard," by applying the standard "illogically," *and* "by strik[ing] an unreasonable balance of relevant factors." *Lewis*, 953 F.3d at 1163–64 (citations omitted).

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court reverse the district court's decision and remand the case for further proceedings.

Dated: July 15, 2024

Respectfully submitted,

/s/ *Corey Stoughton*

Corey Stoughton
Alvaro Mon Cureño
SELENDY GAY PLLC
1290 Avenue of the Americas, 17th Floor
New York, New York 10104
Tel: (212) 390-9000
cstoughton@selendygay.com
amoncureno@selendygay.com

*Counsel for Appellants*

/s/ *Carrie DeCell*

Carrie DeCell
Jameel Jaffer
Stephanie Krent
Anna "Mayze" Teitler
Nicole Mo
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302–304
New York, NY 10115
carrie.decell@knightcolumbia.org
(646) 745-8500

*Counsel for Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** 24-2179 (L), 24-3463

I am the attorney or self-represented party.

**This brief contains 11,384 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Corey Stoughton*      **Date** July 15, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)** 24-2179 (L), 24-3463

The undersigned attorney or self-represented party states the following:

[XX]  I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** */s/ Corey Stoughton*          **Date** July 15, 2024

48

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Corey Stoughton*